**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4355-17T1

DEBORAH KLINE and
JEFFREY DERSTINE, w/h,

     Plaintiffs-Appellants,

v.

JOHNSON & JOHNSON and
ETHICON, INC.,

     Defendants-Respondents.

_____

        Argued October 18, 2019 – Decided March 6, 2020

        Before Judges Ostrer and Vernoia.

        On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1236-14.

        Shay S. Deshpande argued the cause for appellants (Franzblau Dratch, PC, attorneys; Shay S. Deshpande, on the brief).

        David R. Kott argued the cause for respondents (McCarter & English, LLP, and Riker Danzig Scherer Hyland & Perretti LLP, attorneys; David R. Kott and Kelly Strange Crawford, of counsel; Natalie H.

Mantell, Amanda M. Munsie and Benjamin D. Heller, on the brief).

PER CURIAM

Plaintiffs Deborah Kline (Kline) and her husband Jeffrey Derstine alleged in a March 2014 complaint that a polypropylene mesh implanted in Kline's body to repair a hernia caused significant medical complications and damages. Kline alleged that defendants Ethicon, Inc. and Johnson & Johnson defectively designed, manufactured, and labelled the mesh. However, Kline was unable to present competent evidence that defendants, as opposed to some other medical device manufacturer, produced the mesh that allegedly caused her harm. For that reason, Judge Nelson C. Johnson granted defendants' summary judgment motion, dismissing the complaint with prejudice. The court also barred further discovery as untimely and likely futile.

In her appeal, Kline reprises arguments she presented to the trial court. She contends that her medical expert's opinion created a genuine issue of material fact regarding the manufacturer's identity. He opined that Johnson & Johnson made the mesh he surgically removed from Kline's body almost six years after it was implanted. Kline contends the trial court erred in barring the expert's opinion as a net opinion. Kline also contends summary judgment was premature, as she had yet to depose a corporate representative of defendants who

may have been able to shed light on whether defendants manufactured the mesh. Kline contends the trial court erred in barring that deposition as untimely. Finally, Kline argues that even if she could not identify the maker of her mesh, the court should have allowed her lawsuit to proceed on a "market share theory" of liability.

Reviewing the trial judge's order de novo, applying the same standard as he did, see Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (describing the standard of review), we affirm substantially for the reasons Judge Johnson presented in his written opinion.

Judge Johnson properly concluded that Kline failed to meet her burden under applicable California law – her hernia surgery occurred in California – to identify the product manufacturer in order to sustain her causes of action. See O'Neil v. Crane Co., 266 P.3d 987, 1005 (Cal. 2012); Garcia v. Joseph Vince Co., 148 Cal. Rptr. 843, 846 (Ct. App. 1978). Kline does not challenge the court's finding that hospital and patient records do not disclose who made the mesh used to repair Kline's hernia in 2007. Although the surgeon's operative report referred to "Prolene mesh" – and defendants registered the trademark Prolene® – he explained he used the term generically to refer to any polypropylene mesh. Furthermore, defendants' sales records showed they sold

A-4355-17T1

no Prolene® mesh to Kline's California hospital in the relevant time period. Absent any other evidence in the record to identify the manufacturer, Kline relies on her expert's opinion.

However, Judge Nelson properly rejected it as a net opinion. After the expert stated that he reviewed the operative report, deposition transcripts, and the summary judgment papers, he simply concluded, "[I]t is my opinion that the 'mesh' described in the subject records and through my examination of the subject mesh it [sic] is manufactured by Johnson and Johnson. The term 'Prolene Mesh' is not a generic term and correctly identifies the product as manufactured by Johnson and Johnson." This conclusion falls far short of providing the "why and wherefore" that the net opinion rule requires. See Townsend v. Pierre, 221 N.J. 36, 54 (2015). What about the expert's observations led him to conclude that defendants made the mesh that he removed from Kline's body (and preserved ever since in a jar of chemical solution)? The expert does not say. If there are design or chemical peculiarities that distinguish defendants' product from their competitors', the expert does not describe them. Nor does he explain how those telltales could be discerned after all this time. Kline alleged in her complaint that the mesh "shrinks, oxidizes and becomes brittle and sharp" in the body.

A-4355-17T1

Also, the expert's statement that Prolene® is a registered trademark that identifies defendants' product is of no consequence. The surgeon who wrote "Prolene mesh" in the operative report testified that he used the term generically. The surgeon was like the average person who generically refers to a product using a trademarked name.[1] Therefore, his use of the term "Prolene mesh" proves nothing except that he used some form of polypropylene mesh.

Judge Johnson also properly dispatched Kline's suggestion that the court apply the "market share liability doctrine" to free her from proving defendants made her mesh. Under the doctrine, a defendant may "be held liable for the proportion of the judgment represented by its share of th[e] market" for the product, "unless it demonstrates that it could not have made the product which caused [the] plaintiff's injuries." Sindell v. Abbott Labs., 607 P.2d 924, 937 (Cal. 1980). However, the Sindell court applied the doctrine to a drug that multiple defendants produced "from an identical formula," and where the named defendants accounted for a "substantial percentage" of the total market. Id. at 936-37. Here, the summary judgment record includes no evidence that

---

[1] See McCarthy on Trademarks and Unfair Competition, § 12:8 (5th ed. 2019) (stating that "[b]uyers or users of a product may sometimes use a trademark in a generic sense in casual conversation even though when questioned, those persons are fully aware of the trademark significance of the term," referring to Kleenex and Tylenol as examples).

A-4355-17T1

polypropylene mesh products are essentially the same. And, Kline did not join any other defendants, let alone establish that they account for a "substantial percentage" of the market.

Lastly, upon deferential review, we discern no abuse of discretion that would compel us to disturb the court's order foreclosing further discovery. See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (describing standard of review of discovery orders). Some background is needed.

In April 2015, the court warned Kline's counsel at the time that proof that defendants made Kline's mesh was essential. At a June 2017 case management conference, Kline's current counsel informed the court that he did not anticipate the need for further discovery. The court ordered the parties to complete fact discovery and fact depositions by January 31, 2018.

Kline's counsel did not comply. On January 17, Kline's counsel emailed defense counsel, "I will be noticing depositions of your clients for January 31, 2018 at 10:00 a.m. in your office. Please produce your people at that time." Evidently counsel conferred, and five days later, Kline's counsel followed with an unsigned draft "notice of deposition for 4:14-2(c) designees," seeking depositions of persons with knowledge of seven topics, none of which

6

specifically asked for a person capable of examining the actual mesh removed from Kline.

> 1.  Development and manufacturing of Prolene Mesh, including the make-up of the product.
>
> 2.  Packaging for sale of the mesh product including but not limited to product codes, lot.
>
> 3.  Names of distributers, suppliers that defendant utilized in 2005, 2006, 2007 to sell mesh products.
>
> 4.  Knowledge regarding sales made to Thousand Oaks Surgical Center.
>
> 5.  Notices received by defendant from Thousand Oaks Surgical Hospital regarding any recalls of mesh products.
>
> 6.  Studies and research performed by defendants regarding the efficacy of Prolene Mesh.
>
> 7.  Studies and research performed by defendant regarding its mesh products and potential complications prior to its launch in 2005.

Defense counsel responded the next day, objecting that the topics were too broad and vague, and the notice provided insufficient time. Rule 4:14-2(a) requires ten days' notice for depositions. Defendants filed a motion for a protective order.

Kline then moved to extend discovery and to compel the deposition of a corporate representative. In March 2018, Kline's counsel formally served a

signed deposition notice, seeking the production of a corporate designee who would be knowledgeable about the following topics:

1.    Development and manufacturing of Prolene Mesh, including the make-up of the product;

2.    Description of the Prolene Mesh operation principle;

3.    Structure and composition including supporting accessories;

4.    Intended Uses and contra-indications (who cannot use this product);

5.    Product performance studies (research information for performance study, technical requirements study and its compiling instructions, including performance and safety studies[)];

6.    Information on Bio-safety research;

7.    Clinical Evaluation Material Reports;

8.    Risk analysis material reports of Mesh products;

9.    Product testing reports;

10.    Safety Performance of Medical device studies;

11.    Infection and Microbial Contamination analysis reports;

12.    Packaging for sale of the mesh product including but not limited to product codes, lot;

A-4355-17T1

13. Names of distributers, suppliers that defendant utilized in 2002, 2[0]03, 2004, 2005, 2006, and 2007 to sell mesh products in California and near the Los Ang[e]les area;

14. Knowledge regarding sales made to Thousand Oaks Surgical Center from 2002-2007;

15. Notices received by defendant from Thousand Oaks Surgical Hospital regarding any recalls of mesh products;

16. Studies and research performed by defendants regarding the efficacy of Prolene Mesh;

17. Studies and research performed by defendant regarding its mesh products and potential complications prior to its launch in 2005;

18. Product and development including and risks associated with Prolene Mesh;

19. Control studies human and animal testing of Prolene Mesh report;

20. Risk of product use injuries caused in animal and human trials and studies;

21. All parties involved in search of identification of sales regarding Deborah Kline's mesh product;

22. The head of product development and sales; [and]

23. Operating procedure for determining with to recall a product and warn the public of potential risks and injuries.

9

A-4355-17T1

In support of the request for further discovery, Kline's counsel contended that "[t]he purpose of the deposition would be to determine whether Johnson and Johnson produced the product in question and to determine how far of a search Johnson and Johnson employees should search their records[,] [i]n addition to other issues related to the production and history of the Prolene Mesh." However, in a letter to the court, counsel suggested that he wanted to do more than scrutinize defendants' document search. Counsel stated that the corporate designee would be asked to examine the mesh removed from Kline's body, and state whether it was defendants' product. However, neither the email, draft notice, nor March 2018 notice, stated that.

In denying Kline's motions to compel further discovery, and granting defendants' motion to bar it, the court concluded that Kline's counsel had over three years to discover evidence to identify Kline's mesh. The court refused "to allow Plaintiff to prolong this matter even further by seeking to depose some unknown, unnamed representative of Defendants who is unlikely to be able to identify the mesh in any event." The court asserted that over time in the body, "[t]he mesh does not have the same physical characteristics and composition as it did when it was inserted."

Plaintiffs have not demonstrated that the court abused its discretion. The discovery requests sought too much, too late, and did not comply with the Court Rule. The informal email was not a formal deposition notice; and, putting formalism aside, it was so general that defendants could not possibly comply, even if they wanted. The January 22 "draft" notice was, strictly speaking, untimely, as it failed to give defendants ten days to respond before the January 31 deadline. See R. 4:14-2(a).

It was also evident, based on the broadly defined topics, that depositions could not possibly be completed by January 31. Rather, these were the topics that plaintiffs' counsel should have been exploring throughout discovery. They included the nature of the product itself, such as its "[d]evelopment and manufacturing" and "make-up"; "[s]tudies and research performed by defendants regarding the efficacy of Prolene Mesh"; and "[s]tudies and research performed by defendant regarding its mesh products and potential complications prior to its launch in 2005." The draft notice also referred to sales and notices related to the specific facility where Kline received a mesh product. Plaintiffs also sought depositions regarding product packaging, and the names of all defendants' mesh distributors used in 2005 through 2007. Plaintiffs actually expanded the list of topics in its March 2018 notice, but that was even more

untimely. Plaintiffs provide no explanation or excuse for seeking to commence such broad discovery just before the deadline by which such discovery should have been completed.

Notably, neither the draft notice, nor the actual notice served two months later, explicitly asked for a representative who might be able to identify the origin of the mesh removed from Kline and preserved in a jar. In any event, plaintiffs provided no basis for the court to conclude that such an identification were possible. In sum, we shall not disturb the court's order barring further fact discovery and denying plaintiffs' motion to extend the discovery period.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4355-17T1